SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
GAIL HARRISON,

                                  Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE COMPANY,
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and
EMPIRE BLUE CROSS BLUE SHIELD OF NEW YORK,

                                  Defendants.
---------------------------------------------------------------X

Index No.: 108523/05

**SUMMONS**

Plaintiff designates
New York County
as the place of trial

The basis of venue is:
Defendants' principal
offices

Plaintiff resides at:
11 Dover Road
Mt. Holly, NJ 08060

To the above named Defendants:

      You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
          June 16, 2005

Yours etc.

_/s/ Richard A. Dienst_

RICHARD A. DIENST
QUELLER, FISHER, DIENST, SERRINS
WASHOR & KOOL, LLP.
Attorneys for Plaintiff
233 Broadway, 18th Floor
New York, New York 10279

TO:  Metropolitan Life Insurance Company
       Legal Department
       One Madison Avenue
       New York, New York 10010

NEW YORK
COUNTY CLERK'S OFFICE
JUN 20 2005
NOT COMPARED
WITH COPY FILED

Horizon Blue Cross Blue Shield of New Jersey
Legal Department
3 Penn Plaza
Newark, New Jersey 07105

Empire Blue Cross Blue Shield of New York
Legal Department
15 Metrotech Center
Brooklyn, New York 11201

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
GAIL HARRISON,

                            Plaintiff,

      -against-

METROPOLITAN LIFE INSURANCE COMPANY,
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and
EMPIRE BLUE CROSS BLUE SHIELD OF NEW YORK,

                           Defendants.
------------------------------------------------------------X

Index No.: 108523/05

**VERIFIED COMPLAINT**

Plaintiff, GAIL HARRISON, by her attorneys, QUELLER, FISHER, DIENST, SERRINS, WASHOR & KOOL, LLP, as and for a Verified Complaint respectfully alleges upon information and belief:

### AS AND FOR A FIRST CAUSE OF ACTION

1. That at all times hereinafter mentioned Plaintiff Gail Harrison is a citizen of the State of New Jersey and a resident of the County of Burlington.

2. That on September 16, 2002, the date hereinafter complained of, the deceased John H. Harrison was the spouse of Plaintiff Gail Harrison.

3. That all times hereinafter mentioned Defendant Metropolitan Life Insurance Company (hereinafter referred to as "MetLife") is an insurance carrier duly licensed to do business in the State of New York and maintains a place of business at One Madison Avenue, New York, New York 10010.

4. That at all times hereinafter mentioned Defendant Horizon Blue Cross Blue Shield of New Jersey (hereinafter referred to as "Horizon") is a foreign corporation doing business in the State of

2

New York, is a health insurance provider duly licensed to do business in the State of New Jersey and maintains a place of business at 3 Penn Plaza East, Newark, New Jersey 07105.

5. That at all times hereinafter mentioned Defendant Empire Blue Cross Blue Shield of New York (hereinafter referred to as "Empire") is a health insurance provider duly licensed to do business in the State of New York and maintains a place of business at 11 West 42nd Street, New York, New York 10036.

6. That at all times hereinafter mentioned Defendants Horizon and Empire are "Affiliated Employers" within the Blue Cross Blue Shield Association.

7. That on or about November 16, 1992, John H. Harrison was the spouse of Plaintiff Gail Harrison.

8. That on or about November 16, 1992, John H. Harrison commenced employment as Director of Investigations with Defendant Horizon.

9. That John H. Harrison had continuous employment with Defendant Horizon to on or about September 9, 2001.

10. That on or about September 9, 2001, John H. Harrison was laterally transferred from his position as Director of Investigations with the "Affiliated Employer" Defendant Horizon to Assistant Vice President of Fraud Control with the "Affiliated Employer" Defendant Empire.

11. That John H. Harrison had continuous employment with Defendant Empire until September 16, 2002, the date of John H. Harrison's death hereinafter complained of.

12. That from on or about November 16, 1992 to September 16, 2002, John H. Harrison maintained continuous and active employment with Defendants Horizon and Empire, "Affiliated Employers" within the Blue Cross Blue Shield Association, with no break in service and no

3

termination of service time.

13. That John H. Harrison's lateral transfer from Defendant Horizon to Defendant Empire on or about September 9, 2001 entailed no break in service and no termination of service time.

14. That as evidence of his continuous service with Defendants Horizon and Empire, Defendant Empire in 2002 gave John H. Harrison a "Recognition of Service" award recognizing his ten years of competent, loyal, dedicated and continuous service with the "Affiliated Employers," Defendants Horizon and Empire.

15. That on or about September 9, 2001, when John H. Harrison was laterally transferred to Defendant Empire, his prior service with Defendant Horizon was carried over for purposes of benefits that are based on years of service, including vesting in Defendants' Pension Plan, the 401(k) Employee Savings Plan match, vacation allotment, short-term disability allotment, the receipt of Flexible Benefits Choice Credits for the High Option Long Term Disability Plan, Tuition Reimbursement and Service Anniversary Awards.

16. That from November 16, 1992 to on or about September 9, 2001, while employed by Defendant Horizon, John H. Harrison maintained life insurance coverage through an employer-provided group life insurance benefits plan that was offered to Horizon employees pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2005) ("ERISA").

17. That on or about September 9, 2001, the date of his lateral transfer, John H. Harrison was issued a replacement life insurance policy by the Defendants.

18. That from on or about September 9, 2001 to September 16, 2002, John H. Harrison maintained life insurance coverage through an employer-provided group life insurance benefits plan that was offered to Empire employees by Defendant MetLife pursuant to the Employee Retirement Income

4

Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2005).

19. That because John H. Harrison maintained an employer-provided group life insurance benefits plan while employed by Defendant Horizon, his service time for purposes of life insurance coverage was or should have been carried over when he was laterally transferred to Defendant Empire because the life insurance policy offered by Defendant Empire was a substitute for the original life insurance policy issued by Defendant Horizon, the effect of which was a continuance of the original insurance contract.

20. That John H. Harrison's service time was or should have been carried over for purposes of life insurance coverage as his lateral transfer entailed no break in service time and his other ERISA benefits which were also were based on years of service were carried over, including vesting in Defendants' Pension Plan, the 401(k) Employee Savings Plan match, vacation allotment, short-term disability allotment, the receipt of Flexible Benefits Choice Credits for the High Option Long Term Disability Plan, Tuition Reimbursement, and Service Anniversary Awards.

21. That on September 16, 2002, the date of his death, John H. Harrison had in full force and effect the employer-provided life insurance plan issued to him by Defendant MetLife with a coverage amount of $520,000 (hereinafter referred to as the "Plan").

22. That the Plan is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2005).

23. That the Plan includes a two-year suicide exclusion, which states at page 11, paragraph C of the Summary Plan Description effective 01/01/98: *"Life Benefits under options 2, 3, 4, and 5 will not be paid to the Beneficiary if you commit suicide within 2 years from the effective date of this certificate."*

5

24. That the deceased John H. Harrison had elected life benefits under option 5 of the Plan, and the coverage amount was equal to an amount five times his base annual earnings, or $520,000.00.

25. That John H. Harrison's effective date of life insurance benefits commences from the date of the issuance of his original life insurance policy and not the date of the issuance of the substitute policy provided by Defendants.

26. That more than two (2) years passed from the date of the issuance of the original policy and its replacement.

27. That because more than two (2) years passed from the date of the issuance of the original life insurance policy and the replacement policy, the suicide exclusion does not apply.

28. That Plaintiff Gail Harrison, the spouse of John H. Harrison, was at all times hereinafter mentioned the designated primary beneficiary of the Plan.

29. That prior to the terrorist attacks on the World Trade Center and the events of September 11, 2001, John H. Harrison's mental health and stability were normal.

30. That prior to September 11, 2001, John H. Harrison had a long and distinguished career in law enforcement and was consistently recognized for his competent, dependable leadership and ability to successfully work under stress and pressure.

31. That from 1970 to 1978, John H. Harrison, after competing in open and competitive civil service examinations and passing physical and mental examinations, was appointed a police officer, and was later promoted to Detective within the Philadelphia Police Department.

32. That in 1978, John H. Harrison, after passing thorough and exhaustive physical and mental examinations by United States government physicians and psychologists, was found fully fit physically and mentally to be employed as a Special Agent of the Federal Bureau of Investigation

(hereinafter referred to as "FBI").

33. That from 1978 to 1985, John H. Harrison served as a Special Agent of the FBI and successfully fulfilled all of the physical and mental rigors and demands inherent in the nature of his employment.

34. That in 1985, the FBI promoted John H. Harrison from the position of Special Agent to the position of Supervisory Special Agent.

35. That from 1985 to 1989, John H. Harrison as a Supervisory Special Agent supervised a regional FBI office and managed investigations, which required mental stability, proven leadership abilities and a capacity to withstand stress and pressure.

36. That in addition to his federal and municipal employment, at various times throughout his law enforcement career John H. Harrison was found mentally and physically competent to receive training from the U.S. Secret Service, U.S. Department of Justice and U.S. Attorneys' Offices.

37. That prior to his employment, the Defendant Horizon examined John H. Harrison and found him mentally and physically fit for appointment.

38. That from about November 16, 1992 to about September 9, 2001, John H. Harrison served as a Director of Investigations for Defendant Horizon and was charged with supervising employees and managing their investigative department.

39. That on or about September 9, 2001, John H. Harrison was laterally transferred from his position with Defendant Horizon to the position of Assistant Vice President of Fraud Control with Defendant Empire, an "Affiliated Employer" of Defendant Horizon.

40. That prior to September 11, 2001, John H. Harrison was pleasant, congenial, and patient toward his coworkers and subordinates and received high evaluations from his superiors.

41. That on September 11, 2001, John H. Harrison, while working in Defendant Empire's New York office on the 29th floor of Building One at the World Trade Center, sustained severe mental and emotional trauma when an aircraft piloted by terrorists crashed into the building.

42. That John H. Harrison directed his co-workers to immediately evacuate Defendant Empire's premises, and he and other Empire employees managed to escape the building immediately prior to its collapse.

43. That as a result of the attack of September 11, 2001 on the World Trade Center, John H. Harrison's mental health and stability deteriorated until his death on September 16, 2002.

44. That when John H. Harrison returned to work after the attack on the World Trade Center, he resumed his pre-September 11, 2001 high-level managerial responsibilities, although there were subtle but obvious changes in his personality and behavior as a result of the severe mental and emotional trauma he sustained.

45. That John H. Harrison became obsessed with his September 11, 2001 experience and recounted the details of his experience to people with whom he came into contact.

46. That during 2001 and 2002, John H. Harrison wrote a narrative and made a film about his September 11, 2001 experiences.

47. That following the events of September 11, 2001, John H. Harrison developed fears of tall buildings and of flying; he insisted that he and his wife travel by car or travel on separate planes.

48. That from about April 2002 to June 2002, John H. Harrison's behavior and personality changes became more apparent and extreme, however, Defendants permitted him to work in his high-level managerial position.

49. That in 2002, as his mental and physical state continued to deteriorate, John H. Harrison

8

became irritable, introverted, and depressed; lost large amounts of weight; neglected his personal grooming; isolated himself from friends and coworkers; and became hostile and aggressive toward his wife.

50. That in July 2002, John H. Harrison abruptly confronted Plaintiff Gail Harrison, his wife of ten years, about terminating the marriage, and shortly thereafter moved out of their home.

51. That in August 2002, John H. Harrison's coworkers at Defendant Empire noticed significant changes in John H. Harrison's appearance, managerial style and professional behavior; Defendant Empire then knew or upon reasonable observation or inquiry should have known of John H. Harrison's insanity.

52. That in August 2002, it became obvious to coworkers and was or should have been known to Defendant Empire that John H. Harrison was insane and had become withdrawn, isolated, surly and erratic, in direct contrast to his pre-September 11, 2001 behavior, managerial style and personality.

53. That in August 2002, John H. Harrison reported to work unkempt, unshaven, and sloppily dressed, in direct contrast to his pre-September 11, 2001 appearance, and Defendant Empire knew or should have known that John H. Harrison was insane and suffering from mental illness.

54. That on or about August 30, 2002, John H. Harrison moved out of the marital residence, isolated himself, and refused to inform the Plaintiff of his whereabouts.

55. That from August 2002 to September 16, 2002, John H. Harrison's insanity continued to exacerbate, as demonstrated by his personality, behavior, managerial style and appearance.

56. That on September 11, 2002, additional pressure was put on an already insane John H. Harrison because of the one-year anniversary of the Trade Center Attack of September 11, 2001.

9

57. That on September 16, 2002, five (5) days after the anniversary of the events of September 11, 2001, John H. Harrison, as a result of a mental defect or disease and under the influence of an impulse that he lacked the mental capacity to resist, fatally shot himself and two other Empire employees in Defendant Empire's Times Square office.

58. That John H. Harrison's death on September 16, 2002 resulted from an act committed under the influence of an impulse that he lacked the mental capacity to resist and which resulted from a mental disease or defect caused, in whole or in part, by the attack on the World Trade Center and was exacerbated by the one-year anniversary of the attack.

59. That on September 16, 2002, the date of his death, John H. Harrison was insane and acting under the influence of an impulse that he lacked the mental capacity to resist when he committed the acts that caused his death and the deaths of others.

60. That on or about November 11, 2002, Defendant MetLife notified Plaintiff Gail Harrison by letter that her claim as the designated primary beneficiary on John H. Harrison's life insurance policy was denied because her husband committed suicide within two years of the effective date of his insurance policy.

61. That by letter dated January 3, 2003, Plaintiff Gail Harrison formally requested that Defendant MetLife review the denial of her rights as a beneficiary.

62. That on or about March 6, 2003, Defendant MetLife notified Plaintiff Gail Harrison that it received her request for review of denial of the claim and had determined that the claim would be referred for administrative review.

63. That on or about March 29, 2004, Defendant MetLife notified Plaintiff Gail Harrison that its administrative review committee upheld the denial of her claim.

10

64. That on or about April 22, 2004, in response to her written request dated April 8, 2004, Defendant MetLife sent Plaintiff Gail Harrison a copy of the Summary Plan Description booklet and copies of enrollment and designation forms.

65. That Plaintiff Gail Harrison is entitled to receive the proceeds of John H. Harrison's life insurance policy, as John H. Harrison's death did not occur within two (2) years from the date of the issuance of his original life insurance policy and its replacement policy, and additionally, in accordance with New York Insurance Law §3203(b)(1)(B), suicide within a two-year exclusion period does not bar recovery if the act was committed while the decedent, John H. Harrison, was insane.

66. That on September 16, 2002, John H. Harrison was insane when he committed the act that caused his death.

67. That on September 16, 2002, as a result of mental disease or defect, John H. Harrison committed the act that caused his death while he was acting under the influence of an impulse that he lacked the mental capacity to resist.

68. That Plaintiff Gail Harrison has fully performed all the terms and conditions of this contract as required of a beneficiary.

69. That the decision of Defendants to deny Plaintiff Gail Harrison, the designated beneficiary of the Plan, the insurance proceeds resulting from the death of her husband was wrongful and a deliberate violation New York Insurance Law §3203(b)(1)(B) and the documents and instruments governing the Plan.

70. That by reason of Defendants' failure and refusal to perform and complete the Plan's provisions, Defendants have breached their contracts with Plaintiff Gail Harrison, who is a third

11

party beneficiary and the designated primary beneficiary under the Plan and its policies.

71. That as a result of Defendants' violations of New York Insurance Law §3203(b)(1)(B) and breaches of contract, Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A SECOND CAUSE OF ACTION

72. Plaintiff Gail Harrison repeats, reiterates and realleges each and every allegation contained in paragraphs one (1) through seventy-one (71) as if fully set forth herein.

73. That Defendants violated the duties affirmatively imposed on plan fiduciaries by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2005) (hereinafter referred to as "ERISA").

74. That under 29 U.S.C. § 1103(a), a plan fiduciary is one who holds in trust all assets of an employee benefit plan.

75. That Defendants are plan fiduciaries as contemplated by the language of ERISA.

76. That under 29 U.S.C. § 1104(a)(1)(A)(i), a plan fiduciary shall, among other things, discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

77. That the decision by Defendants to deny Plaintiff Gail Harrison the insurance proceeds resulting from the death of her husband was a violation of laws, an arbitrary and capricious determination, an abuse of discretion and an act of bad faith, and as such Defendants breached their fiduciary duties owed to Plaintiff Gail Harrison and the Plan.

78. That Defendants' decision was erroneous as a matter of law: First, John H. Harrison's death did not occur within two (2) years from the date of the issuance of his original life insurance policy

12

and its replacement policy; Second, in accordance with New York Insurance Law §3203(b)(1)(B), suicide within a two-year exclusion period does not bar recovery if the act was committed while the decedent, John H. Harrison, was insane.

79. That Defendants failed to fully and fairly investigate the claim and review available evidence that demonstrates that John H. Harrison was insane at the time of his death.

80. That Defendants were motivated by economic self-interest in denying Plaintiff the insurance proceeds resulting from the death of her husband, and their actions constitute a breach of their fiduciary duties under the Plan and violations of the language and spirit of ERISA.

81. That by these acts, practices and policies, Defendants made an unlawful, arbitrary and capricious determination, abused their discretion and acted in bad faith, thereby breaching their fiduciary duties owed to Plaintiff Gail Harrison and the Plan.

82. That Defendants' unlawful, arbitrary and capricious determination, abuse of discretion and bad faith are violations of 29 U.S.C. §§ 1001-1461 because as plan fiduciaries, Defendants did not discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

83. That as a result of Defendants' violations of 29 U.S.C. §§ 1001-1461 and breaches of fiduciary duties, Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts.

### AS AND FOR A THIRD CAUSE OF ACTION

84. Plaintiff Gail Harrison repeats, reiterates and realleges each and every allegation contained in paragraphs one (1) through eighty-three (83) as if fully set forth herein.

85. That John H. Harrison's employment with Defendant Horizon and Defendant Empire,

13

"Affiliated Employers," from on or about November 16, 1992 to September 16, 2002 was active, continuous and uninterrupted.

86. That as evidence of his continuous service with Defendants Horizon and Empire, in 2002 John H. Harrison received a "Recognition of Service" award acknowledging his ten years of competent, loyal, dedicated and continuous service to these "Affiliated Employers."

87. That when John H. Harrison was laterally transferred to Defendant Empire on or about September 9, 2001, his prior service with Defendant Horizon was carried over for purposes of ERISA benefits which were based on years of service, including vesting in Defendants' Pension Plan, the 401(k) Employee Savings Plan match, vacation allotment, short-term disability allotment, the receipt of Flexible Benefits Choice Credits for the High Option Long Term Disability Plan, Tuition Reimbursement, and Service Anniversary Awards, and his replacement life insurance policy also should have recognized his active, continuous and uninterrupted service.

88. That because John H. Harrison maintained an employer-provided group life insurance benefits plan while employed by Defendant Horizon, his service time for purposes of life insurance coverage was or should have been carried over when he was laterally transferred to Defendant Empire because the life insurance policy offered by Defendant Empire was not a new contract of insurance; rather, it replaced the original life insurance policy issued by Defendant Horizon, an "Affiliated Employer" within the Blue Cross Blue Shield Association, thus effecting a continuance of the original insurance policy.

89. That John H. Harrison was not physically or mentally examined by the Defendants prior to the issuance of the replacement life insurance policy.

90. That John H. Harrison's service time for purposes of life insurance coverage was or should

14

have been carried over in that the lateral transfer entailed no break in service time, and John H. Harrison's other ERISA benefits based on years of service were carried over.

91. That the failure of Defendants to recognize John H. Harrison's prior service with Defendant Horizon for purposes of life insurance benefits constitutes a violation of New York Insurance Law §3203(b)(1)(B), a violation of 29 U.S.C. §§ 1001-1461, a breach of contract and a breach of the Defendants' common law fiduciary duties.

92. That the failure of Defendants to consider the insurance policy issued by Defendant MetLife to John H. Harrison as his original and/or replacement contract of insurance, which would thereby make the two-year incontestability clause inapplicable, constitutes a violation of New York Insurance Law §3203(b)(1)(B), a violation of 29 U.S.C. §§ 1001-1461, a breach of contract and a breach of the Defendants' common law fiduciary duties.

93. That as a result of Defendants' violations of New York Insurance Law §3203(b)(1)(B) and 29 U.S.C. §§ 1001-1461, breach of contract and breach of common law fiduciary duties, Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts.

WHEREFORE, Plaintiff Gail Harrison demands judgment against Defendants MetLife, Horizon and Empire on the first cause of action in the amount of $2,000,000.00, on the second cause of action in the amount of $2,000,000.00 and on the third cause of action in the amount of $2,000,000.000 together with interest, costs, disbursements, reasonable attorneys' fees and such other relief as this Court may deem proper.

15

Dated: June 16, 2005
      New York, New York

Yours, etc.

QUELLER, FISHER, DIENST, SERRINS
WASHOR & KOOL, LLP
Attorneys for Plaintiff
233 Broadway, 18th Floor
New York, New York 10279

By: _____
      Richard A. Dienst, Esq.

## VERIFICATION

RICHARD A. DIENST, an attorney, admitted to practice in the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

That I am a member at the law firm of DIENST & SERRINS, LLP attorneys for the plaintiff in the above-entitled action.

That your deponent has read the foregoing SUMMONS AND VERIFIED COMPLAINT and knows the contents thereof, and that the same is true to his/her own knowledge, except as to the matters therein stated to be alleged, upon information and belief, and as to those matters he/she believes it to be true.

That the source of the deponent's information are investigation and records in the files.

That the reason why the verification is made by deponent and not by the plaintiff is that the plaintiff is not resident within the County where deponent maintains his office.

Deponent affirms that the foregoing statements are true under the penalties of perjury.

Dated:   New York, New York
         June 16, 2005

_____
RICHARD A. DIENST

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GAIL HARRISON,

                Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE COMPANY,
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and
EMPIRE BLUE CROSS BLUE SHIELD OF NEW YORK,

                Defendants.

## SUMMONS AND VERIFIED COMPLAINT

QUELLER, FISHER, DIENST, SERRINS, WASHOR & KOOL, LLP
*Attorneys for*
Plaintiff
233 Broadway, 18th Floor
New York, New York 10279
(212) 406-1700
Facsimile: (212) 406-2313