USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2·28·06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GAIL HARRISON,

                          Plaintiff,

        -- against --

METROPOLITAN LIFE INSURANCE
COMPANY, HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY, and
EMPIRE BLUE CROSS BLUE SHIELD OF
NEW YORK,

                          Defendants.

05 Civ. 6386 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Gail Harrison ("Harrison") brought this action
in New York Supreme Court as the beneficiary of a life
insurance plan of her deceased husband, John H. Harrison
("John Harrison"). Defendants Metropolitan Life Insurance
Company ("MetLife"), Horizon Blue Cross Blue Shield of New
Jersey ("Horizon"), and Empire Blue Cross Blue Shield of New
York ("Empire") removed the proceeding to federal court
pursuant to 28 U.S.C. §§ 1441 and 1446. Harrison alleges
breach of contract, breach of common law fiduciary duties,
violation of New York Insurance Law § 3203(b)(1)(B), and
breach of fiduciary duties pursuant to the federal Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §
1132(a)(3). Harrison seeks monetary damages for each cause of
action. Empire and MetLife (collectively, "Defendants"), move
to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6)

-1-

for failure to state a claim.

Defendants' motion is granted in part and denied in part. It is granted with respect to Harrison's common law breach of contract and breach of fiduciary duty claims. These claims are preempted by ERISA and are accordingly dismissed. The motion is also granted with respect to Harrison's claim of violation of New York Insurance Law § 3203(b)(1)(B) because that provision does not apply to the life insurance plan offered to Empire employees, nor does it give rise to a private cause of action for damages. Defendants' motion is also granted with respect to Harrison's claim for breach of fiduciary duty pursuant to ERISA § 502(a)(3) ("§ 502(a)(3)") because the relief sought pursuant to § 502(a)(3) is available under ERISA § 502(a)(1)(B) ("§ 502(a)(1)(B)"). Finally, for the reasons set forth below, Defendants' motion to dismiss is denied with respect to Harrison's claim pursuant to § 502(a)(1)(B).

## I.   BACKGROUND

In ruling on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the following facts, which are alleged in Harrison's Complaint, as true for this purpose.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 387, 691 (2d Cir. 2001).

This case arises from a tragic incident in which Harrison's late husband, John Harrison, shot and killed two co-workers before fatally shooting himself.   The shootings occurred on September 16, 2002. At the time of the shootings, John Harrison was employed by Empire as Assistant Vice President of Fraud Control.   John Harrison maintained a life insurance policy through a group life insurance plan (the "Plan") offered to Empire employees through MetLife. The Plan is governed by ERISA.    Defendants are Plan fiduciaries pursuant to ERISA.

The Plan offered a minimum death benefit equal to the insured's base salary for one year.  Participants also had the option of choosing a higher death benefit amount.   John Harrison elected death benefits equal to five times his base salary, or $650,000. The Plan contained a provision excluding coverage for benefits in excess of the minimum benefit level if the insured committed suicide within two years of the "effective date" of the insured's participation in the Plan (the "suicide exclusion").   Specifically, the Summary Plan Description for the Plan (the "SPD") stated that "Life Benefits under options 2, 3, 4, and 5 will not be paid to the Beneficiary if you commit suicide within 2 years from the effective date of this certificate."   (Compl. at ¶ 23.)

After John Harrison's death, Harrison, as beneficiary

-3-

under the Plan, attempted to recover benefits due. MetLife paid Harrison $130,000, an amount equal to John Harrison's base salary. However, MetLife denied Harrison's claim for an additional $520,000 in benefits allegedly due as a result of John Harrison's election of the optional higher coverage. MetLife denied Harrison's claim for the additional $520,000 on the grounds that payment of those benefits was precluded by the Plan's suicide exclusion. MetLife concluded that John Harrison's suicide on September 16, 2002, was within two years of the effective date of his participation in the Plan and therefore warranted the denial. Harrison appealed MetLife's decision through the Plan's administrative remedies. The appeal was denied.

John Harrison's employment with Empire commenced in September 2001. Prior to his employment with Empire, John Harrison was employed by Horizon. During his employment at Horizon, from November 1992 through approximately September 9, 2001, he participated in a life insurance plan offered to Horizon employees (the "Horizon Plan").

Horizon is an "Affiliated Employer" of Empire. As a result of the "Affiliated Employer" relationship between Horizon and Empire, John Harrison's years of service at Horizon were included in calculations of his years of service at Empire for purposes of several seniority-related benefits

-4-

pertaining to his employment at Empire, including, among others, vesting in Empire's Pension Plan, vacation allotment, and short-term disability allotment.   According to the Complaint, John Harrison's period of service at Horizon "was or should have been" credited in calculating the "effective date" of his participation in the Plan.   (Compl. at ¶ 19.) Alternatively, Harrison argues that the "effective date" of John Harrison's participation in the Plan dates back to the commencement of his participation in the Horizon Plan because the Empire Plan was a "substitute" or "replacement" for the Horizon Plan.   (Compl. at ¶ 87.)

Harrison also asserts that the suicide exclusion does not preclude coverage for the additional optional benefits under the Plan because the term "suicide" in that provision must be interpreted to exclude suicide committed while the insured was insane, and that John Harrison was insane at the time of his death.   The Complaint alleges that John Harrison sustained emotional trauma during the September 11, 2001 terrorist attack on the World Trade Center.   He was at work at Empire's offices at the World Trade Center when that event occurred. After the attack, John Harrison's mental state gradually deteriorated.   According to Harrison, at the time of John Harrison's death in September 2002, he was insane and lacked the mental capacity to resist an impulse to commit suicide.

## II.   DISCUSSION

### A.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers, 282 F.3d at 152.  However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotation marks and citation omitted).  The Court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### B.   SUBMISSIONS CONSIDERED

In connection with the instant motion, both parties submitted materials extraneous to the Complaint.  Harrison submitted an Affidavit from a report entitled "Psychological Autopsy of John H. Harrison," describing John Harrison's alleged mental state at the time of his suicide.  (See Psychological Autopsy of John H. Harrison  ("Psychological Autopsy"), attached as Exhibit A to Declaration of Richard A. Dienst in Opposition to Defendants' Motion to Dismiss, dated

-6-

September 26, 2005.)  Defendants submitted several documents

related to the Plan, including the SPD (see Empire Blue Cross

Blue Shield Group Life Insurance Benefits Plan, attached as

Exhibit G to Declaration of Randy M. Mastro in Support of

Defendant Empire Blue Cross Blue Shields of New York's Motion

to Dismiss, dated August 22, 2005 ("Mastro Decl. 1");

newspaper articles concerning the September 16, 2002 shootings

(see Devlin Barrett, Sources: Exec, a former FBI agent, kills

2 co-workers, self; Associated Press State and Local Wire,

Sept. 16, 2002; Austin Fenner, Ralph R. Ortega, and Michele

McPhee, Bloody End to Office Affair, Daily News, Sept. 17,

2002, at 3, attached as Exhibit J to Mastro Decl. 1); and

letters exchanged between MetLife and Harrison.

　　　In deciding a Rule 12(b)(6) motion, courts may consider

---

<sup>1</sup> The additional documents submitted by the Defendants include: John
H. Harrison's Application for Employment with Empire, dated April 18,
2001, attached as Exhibit B to Mastro Decl. 1; Employee Action Request,
dated September 17, 2001, attached as Exhibit C to Mastro Decl. 1; Letter
from Jeffrey L. Golove, Director of Resource Planning, to John Harrison,
dated August 15, 2001, attached as Exhibit D to Mastro Decl. 1; Flexible
Benefits Enrollment Form, dated September 18, 2001, attached as Exhibit E
to Mastro Decl. 1; an excerpt from Empire's booklet entitled "Your Benefit
Choices," attached as Exhibit F to Mastro Decl. 1, MetLife Group Policy
No. 94947-G group master policy, attached as Exhibit H to Mastro Decl. 1;
Policy #4240: Former Employees of other Blue Cross and/or Blue Shield
Plans or Affiliated Employers or New Employees as a Result of
Mergers/Acquisitions/Joint Ventures, dated November 1, 2000, attached as
Exhibit I of Mastro Decl. 1; Letter from MetLife Group Life Claims/Team S
to Gail Harrison, dated November 11, 2002, attached as Exhibit K to Mastro
Decl. 1; Notice of Claim Payment, dated November 7, 2002, attached as
Exhibit L to Mastro Decl. 1; Letter from Patricia A. Randall to Gail
Harrison, dated March 29, 2004, attached as Exhibit A to Supplemental
Declaration of Randy M. Mastro in Further Support of Defendant Empire Blue
Cross Blue Shield of New York's Motion to Dismiss the Complaint, dated
October 11, 2005 ("Mastro Decl. 2"); and Letter from Gail Harrison to
Metropolitan Life Insurance Company, dated January 7, 2002, attached as
Exhibit B of Mastro Decl. 2.

-7-

"any written instrument attached to [the complaint] as an
exhibit or any statements or documents incorporated in it by
reference . . . and documents that the plaintiffs either
possessed or knew about and upon which they relied in bringing
the suit." Rothman v. Gregor, 220 F.3d 81, 99-89 (2d Cir.
2000) (citations omitted); see also Cosmas v. Hassett, 886
F.2d 8, 13 (2d Cir. 1989). Harrison cites to the SPD in her
Complaint, specifically quoting from the suicide exclusion.
(See Compl. ¶ 23.) Accordingly, the Court may consider the
SPD for the purposes of deciding this motion. However, the
Court may not consider Defendants' other submissions for
purposes of deciding this motion, as those documents were not
incorporated by reference or cited to in the Complaint, and
there is not sufficient indication that Harrison relied upon
the documents in commencing this action. For the same reason,
the Court excludes the Psychological Autopsy from
consideration for purposes of deciding this motion.

C.   STATE LAW CLAIMS PREEMPTED

Harrison's Complaint asserts New York state common law
breach of contract and breach of fiduciary duty claims based
on allegations that the Defendants violated the terms of the
Plan and violated their fiduciary duties in connection with
the Plan. As noted above, the Plan is governed by ERISA.
Section 514 of ERISA provides that the statute's provisions

-8-

"supersede any and all State laws insofar as they may now or
hereafter relate to any employee benefit plan." 29 U.S.C. §
1144(a). A law "relates to" an employee benefit plan, "in the
normal sense of the word, if it has a connection with or
reference to such a plan." Aetna Life Ins. Co. v. Borges, 869
F.2d 142, 146 (2d Cir. 1989). The preemption clause is not
limited to state laws specifically designed to affect employee
benefit plans. See Toussaint v. JJ Weiser & Co., No. 04 Civ.
2592, 2005 WL 356834, at *12 (citing Pilot Life Ins. Co. v.
Dedaux, 481 U.S. 41, 47-48 (1987)). A state law of general
application, with only an indirect effect on an ERISA-governed
plan, may nevertheless be considered to "relate to" that plan
for preemption purposes. See Smith v. Dunham-Bush, Inc., 959
F.2d 6, 9 (2d Cir. 1992). State laws that provide an
alternative cause of action to employees to collect benefits
protected by ERISA are among those laws that are preempted.
See Borges, 869 F.2d at 146. ERISA's civil enforcement
remedies are intended to be exclusive remedies for enforcing
rights in ERISA-governed plans. See Pilot Life, 481 U.S. at
52. Thus, "any state-law cause of action that duplicates,
supplements, or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the
ERISA remedy exclusive and is therefore pre-empted." Aetna
Health Ins. v. Davila, 542 U.S. 200, 209 (2004); see also,

-9-

Reichelt v. Emhart Corp., 921 F.2d 425, 431 (2d Cir. 1990).
Accordingly, ERISA preempts state law causes of action that
aim "to recover benefits due to [the plaintiff under the terms
of the] plan, to enforce his rights under the terms of the
plan, or to clarify his rights to future benefits under the
terms of the plan." Lupo v. Human Affairs, Int'l, Inc., 28
F.3d 269 272 (2d Cir. 1995).

Harrison's state common law breach of contract and breach
of fiduciary duty claims seek to recover benefits and to
enforce rights under an ERISA-governed plan.  ERISA provides
a civil enforcement remedy for the conduct upon which Harrison
bases her breach of contract and breach of fiduciary duty
claims.  Therefore, the claims are preempted under ERISA.  See
Davila, 542 U.S. at 214-15 (citing Allis-Chalmers Corp. v.
Lueck, 471 U.S. 202, 217 (1985) (holding that where the
obligations alleged to have been unmet or violated are
contained in the ERISA-regulated benefits plan, state law
claims based on such violations are preempted by ERISA).
Accordingly, Harrison's New York state common law breach of
contract and breach of fiduciary duty claims are dismissed.

D.    NEW YORK INSURANCE LAW § 3203(b)(1)(B)

New   York   Insurance   Law   §   3203(b)(1)(B)   ("§
3203(b)(1)(B)")  provides  that  a  life  insurance  policy
delivered in New York State "shall not contain any provision

-10-

excusing or restricting liability in the event of death caused in a certain specified manner," except, among other reasons, "suicide within two years from the date of issue of the policy." N.Y. Ins. Law § 3203(b)(1)(B) (McKinney 2006). Harrison alleges that the term "suicide" in this provision encompasses only suicide committed while the insured was sane. Harrison alleges that Defendants violated § 3203(b)(1)(B) when they interpreted the Plan to preclude coverage where the insured committed suicide while insane.

Harrison's invocation of § 3203(b)(1)(B) must be rejected, however, because § 3203(e) explicitly states that that provision does not apply to group insurance plans. See N.Y. Ins. Law § 3203(e) (McKinney 2006). Harrison concedes that the Plan is a group insurance plan. (See Compl. at ¶ 18.) Furthermore, § 3203(b)(1)(B) does not explicitly create a private right of action to enforce its terms. In the absence of express language creating a cause of action, New York courts apply a three-part inquiry to determine whether such a right should be implied. See Uhr v. East Greenbush Central Sch. Dist., 94 N.Y.2d 32, 38 (N.Y. 1999). The court considers whether (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purposes; and (3) such a right would be consistent

-11-

with the legislative scheme.   See id.   Harrison is not a
member of a class for whose particular benefit the statute was
enacted, as the provision is intended to benefit beneficiaries
of individual, rather than group, plans.   Similarly, the
legislative purpose of this section concerns protections for
beneficiaries of individual, rather than group, plans.
Furthermore, implying a private right of action would not be
consistent with the legislative scheme, which establishes the
procedures for enforcement of various provisions of the
Insurance Law by the Superintendent of Insurance.   See
Sparkes v. Morrison & Foerester Long-Term Disability Ins.
Plan, 129 F. Supp. 2d 182, 187-88 (N.D.N.Y. 1983) (citing N.Y.
Ins. Law § 109).   Therefore, no private right of action may be
implied, and Harrison's claim relying upon Defendants' alleged
violation of § 3202(b)(1)(B) must be dismissed.

E.   ERISA SECTION 502(a)(3)

Harrison's Complaint also alleges a cause of action under
ERISA § 502(a)(3).   Section 502(a)(3) provides that a civil
action may be brought by a beneficiary of an ERISA plan "(a)
to enjoin any act or practice which violates any provision of
this title or the terms of the plan, or (b) to obtain other
appropriate equitable relief (i) to redress such violations or
(ii) to enforce any provisions of this title or the terms of
the plan."   29 U.S.C. § 1132(a)(3) (emphasis added).   However,

-12-

Harrison does not seek to enjoin any act or practice, nor does she seek any other form of equitable relief. Rather, though she pleads breach of fiduciary duty, the relief she seeks is monetary damages based on Defendants' alleged wrongful denial of Plan benefits she claims. Money damages are generally unavailable pursuant to § 502(a)(3). See Lee v. Burkhart, 991 F.2d 1004, 1011 (2d Cir. 1992).

The Supreme Court explained in Varity Corp. v. Howe that ERISA § 502(a)(3) functions "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). Where § 502 otherwise provides adequate relief for an injury, there "will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515.

It is well established that a claim under § 502(a)(3) may, in some circumstances, proceed alongside a claim under § 502(a)(1)(B), which authorizes claims for benefits due under an ERISA plan. See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88, 89-90 (2d Cir. 2001) (allowing a § 502(a)(3) claim to proceed in tandem with a § 502(a)(1)(B) claim). However, there is some disagreement among courts in this district regarding the circumstances under which a plaintiff may appropriately proceed with simultaneous claims under §

-13-

502(a)(1)(B) and § 502(a)(3).   In Chapro v. SSR Realty Advisors, Inc. Severance Plan, for example, the court held that the plaintiff could proceed with claims pursuant to both sections, even where both claims request the same relief. See 351 F. Supp. 2d 152, 156 (S.D.N.Y. 2004).   However, other courts have held that a § 502(a)(3) claim is properly dismissed when the relief sought is the same relief sought under a § 502(a)(1)(B) claim or when the relief sought is not actually "equitable relief," but rather, solely monetary damages.   See, e.g., Mead v. Anderson, 309 F. Supp. 2d 596, 598 (S.D.N.Y. 2004); Davis v. Lenox Hill Hospital, No. 03 Civ. 3746, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004).

The Second Circuit's analysis of this issue in Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006), provides guidance. In Frommert, the Second Circuit upheld a district court's dismissal of a claim for equitable relief under § 502(a)(3) to the extent that the plaintiff sought monetary damages for alleged breach of the terms of an ERISA plan through the vehicle of an equitable claim.   In contrast, the Frommert court reversed the district court's dismissal of a § 502(a)(3) claim of breach of fiduciary duty based on a different set of factual allegations concerning alleged misrepresentation of the terms of the plan to plaintiffs by fiduciaries, on the grounds that the relief the plaintiffs sought in connection

-14-

with that claim could not be adequately addressed by the relief available under § 502(a)(1)(B). See id. at 272.

Harrison's claim under § 502(a)(3) is similar to the properly dismissed claim in Frommert. The Frommert court dismissed that claim to the extent it sought monetary damages because that claim "f[ell] comfortably within the scope of 502(a)(1)(B)." Id. at 270. "Because adequate relief is available under [502(a)(1)(B)], there is no need on the facts of this case to also allow equitable relief under 502(a)(3)." Id. (citing Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004)). The Circuit Court noted that "while the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." Id. (citing Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 321 (2d Cir. 2003)). Similarly, even if couched as a violation of fiduciary duties, the gravamen of Harrison's claim is a claim for monetary compensation for Defendants' alleged failure to comply with the provisions of the Plan. Therefore, the Harrison's breach of fiduciary duty claim is dismissed.

F.    ERISA SECTION 502(a)(1)(B)

ERISA § 502(a)(1)(B) enables a beneficiary to bring a

-15-

claim to recover benefits due under an ERISA plan. The Complaint contains several allegations supporting the elements of a claim under § 502(a)(1).[2]   (See Compl. at ¶ 16, 22, 28, 60, and 61-63.)   Therefore, although Harrison does not expressly characterize her claim for Plan benefits as arising under ERISA § 502(a)(1)(B), the Court concludes that, reading the pleadings in the light most favorable to Harrison and drawing all reasonable inferences in her favor, it is reasonable and appropriate to consider her Complaint to assert an action under that provision.

Harrison initiated her Complaint in state court, where she alleged breach of contract and breach of fiduciary duty claims, as well as a claim under ERISA § 503(a)(3) for breach of fiduciary duty.   Federal courts have disagreed regarding whether a complaint's common law breach of contract claim should be recharacterized as a claim pursuant to ERISA § 502(a)(1)(B) or dismissed without prejudice pursuant to the preemption doctrine.   See, e.g., Fanney v. Trigon Ins. Co., 11 F. Supp. 2d 829, 832 (E.D. Va. 1998) (noting disagreement among courts regarding whether state law claim preempted by ERISA should be recharacterized as a claim pursuant to ERISA

---

[2] To maintain a claim pursuant to ERISA § 502(a)(1)(B), a plaintiff must demonstrate that the employee benefit plan in question is a plan covered by ERISA, that she is a participant in or beneficiary of the plan, and that she exhausted administrative remedies.   See, e.g., Molyneax v. Arthur Guinness & Sons, 616 F. Supp. 240 (S.D.N.Y. 1985).

§ 502(a)(1)(B)).  At least one court in this district has
explicitly addressed the issue and concluded that where a
complaint characterizes a claim as a common law breach of
contract, but sets forth the elements of a claim under ERISA
§502(a)(1), the court's proper course is to recharacterize the
claim as a claim under ERISA § 502(a)(1)(B) rather than to
dismiss the complaint under the preemption doctrine.  See
Arthurs v. Metropolitan Life Ins. Co., 760 F. Supp. 1095, 1098
(S.D.N.Y. 1991).  The Arthurs court's approach is consistent
with the Second Circuit's holding that a pleading is
sufficient where it sets forth the factual allegations
supporting the elements of a claim, even if it fails to
identify the specific law under which it brings a claim.  See
Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 712 n.4 (2d Cir.
1980).  This course of action also promotes the interests of
justice and sound judicial administration.  In an action
commenced in state court grounded primarily on plaintiff's
assertion of state law causes of action, it is to be expected
that the complaint would frame its claims in terms designed to
satisfy the pleading standards of common law causes of action,
and therefore without reference to the requirements of ERISA,
whether in good faith or deliberately to avert removal to
federal court.  To dismiss such claims outright would be
wasteful and inequitable.  Plaintiff in such a case, having no

-17-

other recourse as to a preempted claim, is likely to end up in federal court in any event, if the action is not barred otherwise, by amendment of the complaint to replead the claim dismissed, consistent with the lenient policy prescribed by Fed. R. Civ. P. 15(a).

In the case at hand, the Complaint, originally filed in state court, alleges the elements of a claim under ERISA Section 502(a)(1)(B) and therefore provides the required notice to the Defendants of the substance of the claim. See Fed. R. Civ. P. 8(a). Furthermore, Defendants anticipated that the Court might consider Harrison's breach of contract claim as a claim pursuant to ERISA § 502(a)(1)(B) and accordingly argued in their Memorandum of Law that Harrison failed to state a claim under § 502(a)(1)(B) on the grounds that Defendants' interpretation of the terms of the Plan was "reasonable" and therefore must be upheld.

### 1.    STANDARD OF REVIEW OF ERISA PLAN ADMINISTRATOR'S DECISION

The Supreme Court has held that "a denial of benefits challenged under [502(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where a plan grants discretionary authority to a plan administrator

-18-

to make such determinations, a more deferential standard is applied, and the decision will not be overturned unless it was arbitrary and capricious or erroneous as a matter of law.  Id. Furthermore, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."  Id.

In Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1256 (2d Cir. 1996), the Second Circuit articulated the analysis applied where the plan administrator is allegedly operating under a conflict of interest. Once such a conflict is alleged, the arbitrary and capricious standard becomes a two-pronged test: first, whether the administrator's decision was reasonable, and second, whether the plaintiff's evidence showed that the administrator was in fact influenced by the conflict of interest.  See id. at 1256.  Where the administrator was "in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo."  Id.

Here, it is undisputed that the Plan gives discretionary authority to Defendants.  See SPD, attached as Exhibit G. to Mastro Dec. 1, at 28.   Harrison argues that Defendants' decision to deny the additional optional benefits at issue was

-19-

influenced by a conflict of interest.  She alleges that Empire
operated under a conflict of interest because Empire faced
potential liability for its failure to intervene in response
to John Harrison's mental deterioration.  Harrison also
alleges that MetLife's denial of additional benefits was
improperly influenced by MetLife's economic self-interest as
the funding agent of the Plan.  However, the record is sparse
of evidentiary grounds upon which the Court may properly
assess such a claim.  As no discovery has been conducted at
this stage of the litigation, Harrison has not yet had the
opportunity to collect evidence that might support her
allegation that a conflict of interest influenced Defendants'
decision to deny the additional benefits allegedly due under
the Plan.  See Thompson v. General Electric Co., No. 01 Civ.
4438, 2002 WL 482862, at *4 (S.D.N.Y. March 29, 2002).  It is
conceivable that, after discovery, Harrison might be able to
demonstrate that Defendants' decision to deny benefits was
influenced by the alleged conflict of interest.  Thus, it is
not beyond doubt that Harrison can prove no set of facts that
would entitle her to relief.  Should Harrison eventually
demonstrate that the alleged conflict of interest influenced
Defendants' decision, the Court would apply the de novo
standard of review.

      Since the proper analysis and standard of review will

-20-

turn on Harrison's ability to demonstrate that a conflict of interest influenced Defendants' decision-making, the Court will not be able to determine the proper analysis and standard of review until discovery has been completed and any evidence of that a conflict of interest influenced decision-making has been submitted.   See Suozzo v. Bergreen, No. 00 Civ. 9649, 2002 WL 1402316 (S.D.N.Y. June 27, 2002); see also Peck v. Aetna Life Ins. Co., No. Civ.A.3:04-CV1139JCH, 2005 WL 1683491, at *5 (D.Conn. July 19, 2005).   Nonetheless, the Court concludes that even under the highly deferential "arbitrary and capricious" standard, Harrison's Complaint states a claim under ERISA § 502(a)(1)(B), as explained below.

## 2.   APPLICATION OF STANDARD OF REVIEW

Harrison advances two separate theories in support of her claim that Defendants' denial of additional benefits under the Plan constituted an abuse of discretion or an error of law. First, Harrison argues that Defendants abused their discretion and/or erred as a matter of law in interpreting the term "suicide" in the Plan to encompass suicide committed while the insured was insane.   Second, Harrison argues that the suicide exclusion in the SPD did not apply to John Harrison's death because his suicide occurred more than two years after the effective date of John Harrison's participation in the Empire Plan.   Because the Court concludes that Harrison's Complaint

-21-

states a claim pursuant to § 502(a)(1)(B) on the basis of her argument that the Defendants' interpretation of the term "suicide" to encompass suicide committed while the insured was insane was arbitrary and capricious and/or constituted an error of law, the Court will not address Harrison's alternative theory of recovery under § 502(a)(1)(B).

As noted above, the arbitrary and capricious standard of review is highly deferential to the plan manager. See Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1269-71 (2d Cir. 1995). "Pursuant to this standard, a denial of benefits may be overturned only if [the decision] was 'without reason, unsupported by substantial evidence or erroneous as a matter of law." Dunnigan v. Metropolitan Life Ins. Co., No. 99 Civ. 4059, 2000 WL 264322, at *5 (S.D.N.Y. Mar. 9, 2000). However, even under the arbitrary and capricious standard, questions of law are reviewed de novo. See Weil v. Retirement Plan Admin. Comm. of the Terson Co., Inc., 913 F.2d 1045, 1049 (2d Cir 1990), aff'd in part and vacated in part on other grounds, 933 F.2d 106 (2d Cir. 1991).

In some situations, a complaint purporting to state a claim under § 502(a)(1)(B) may be dismissed at the pleadings stage on a Rule 12(b) motion when the court finds that the defendant's interpretation of a plan term was "reasonable" and therefore must be upheld under the arbitrary and capricious

-22-

standard.  See, e.g., Winiger v. Wilcox Fuel, Inc., No.302 CV
1671, 2004 WL 97626 (D.Conn. Jan. 12, 2004).  The Court
concludes, however, that it would be premature to rule on
whether the Defendants' interpretation of the suicide
exclusion was "reasonable" at this stage of this proceeding.

Defendants assert that the Complaint must be dismissed
because Defendants' interpretation of the term "suicide" to
include suicide while the insured was insane was "reasonable"
and not an error of law.  To determine "reasonableness" in an
arbitrary and capricious analysis, courts have considered,
inter alia, (a) whether the defendant has consistently
interpreted a term in a plan in a particular way, (b) whether
industry practice is consistent with the defendants'
interpretation, or (c) whether any legal authority supports
their assertion that the interpretation is "reasonable."  See,
e.g., Smith v. Rochester Tel. Bus. Mktg. Corp., 786 F. Supp.
293, 299 (W.D.N.Y. 1992), aff'd, 40 F.3d 1236 (2d Cir. 1994)
(table) ("The consistency of prior interpretations of a plan
provision is a factor that the court may consider in
determining whether a given interpretation is arbitrary and
capricious."); Semmler v. Metropolitan Life Ins., 1995 WL
55930, at *11 (S.D.N.Y. 1995) (granting summary judgment to
defendants where defendants submitted evidence that denial of
benefits conformed with its own historical practice and that

-23-

such practice was "not uncommon in the medical field").
Without a record prepared after adequate discovery, however,
Defendants' claim of reasonableness is not supported by any
evidence regarding Defendants' own relevant policies or past
practice, insurance industry standards, relevant legal
authority, or any other evidence. Furthermore, Harrison may
conceivably collect evidence during discovery that could
demonstrate that Defendants' interpretation of the suicide
exclusion was not consistent with Defendants' policies or past
practice or industry standards.

In addition, Harrison cites state case law in support of
her assertion that the unqualified term "suicide" in an
insurance policy encompasses suicide committed while the
insured was sane but excludes suicide committed during
insanity. See, e.g., Franklin v. John Hancock Mut. Life Ins.
Co., 80 N.E.2d 746 (N.Y. 1948) ("According to many cases in
this court, a stipulation in a life policy excluding death by
'suicide' is effective if the insured kills himself while sane
but is inoperative if the insured at the time of his suicide
was so far insane as to have been lacking appreciation of the
physical consequences of his action or without power to resist
the disordered impulse that impelled him to end his own
life."); Van Zandt v. Mutual Benefit Life Ins. Co., 55 N.Y.
169 (N.Y. 1873) (holding that life insurance policy provision

-24-

excluding coverage if the insured "should die by his own hands" does not apply to suicide committed while insane); see also Strasberg v. Equitable Life Assur. Soc. of United States, 117 N.Y.S.2d 236 (App. Div. 1st Dep't 1952) (holding that life insurance policy excluding death by "suicide, sane or insane" is inoperative if insured is, at time of suicide, so far insane as to be without power to resist impulse that impels him to end his own life); 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance, § 138:34-36 (3d ed. 2005) ("By the general rule, a simple suicide exception clause does not apply to exclude coverage when the insured intentionally kills himself or herself when his or her reasonable faculties are so far impaired by insanity that he or she is unable to understand the moral character of his or her act, even if he or she understands its physical nature . . . as such act is not 'suicide'. . . within the meaning of those words, or words of like character and construction excepting such risks out of the policy.")

In light of this authority, and for the reasons set forth above, the Court concludes that Harrison may be able to demonstrate that Defendants' interpretation of the terms of the Plan was not "reasonable" or that Defendants' interpretation of the term "suicide" in the Plan constituted an error of law. Therefore, the Court denies Defendants'

motion to dismiss Harrison's claims pursuant to ERISA §
502(a)(1)(B).

### III.   ORDER

For the foregoing reasons, it is hereby

ORDERED that the motion to dismiss (Docket No. 11) of
defendants Metropolitan Life Insurance Company and Empire Blue
Cross Blue Shield of New York (collectively, the "Defendants")
is GRANTED with respect to the claims of plaintiff Gail
Harrison ("Harrison") under state law for breach of contract,
breach of fiduciary duty, New York Insurance Law § 3203, and
under ERISA § 502(a)(3); and it is further

ORDERED that Defendants' motion to dismiss (Docket No.
11) is DENIED with respect to Harrison's claim pursuant to
ERISA § 502(a)(1)(B).


**SO ORDERED.**

Dated:   New York, New York
         28 February, 2006

                                    _____
                                       Victor Marrero
                                         U.S.D.J.

-26-